UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
FAUSTINA E. HAYNES,

                       Plaintiff,

              -against-

THE CITY OF NEW YORK, DAVID HANSELL,
JILL KRAUSS, MELISSA HESTER, TIA WADDY,
and JOHN and JANE DOE (said names being
fictitious, the persons intended being those who aided
and abetted the unlawful conduct of the named
Defendants),

                      Defendants.
---------------------------------------------------------------X

**COMPLAINT**

Docket No.:

**JURY TRIAL
REQUESTED**

Plaintiff, **FAUSTINA E. HAYNES** ("Plaintiff"), by her attorneys, **MADUEGBUNA COOPER LLP**, for her complaint alleges:

## I.    THE NATURE OF THIS ACTION

1.     This is an action for injunctive relief, declaratory judgment, and money damages to remedy discrimination and retaliation on the basis of disability and age in the terms, conditions, and privileges of employment under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* ("Rehabilitation Act"); New York State Human Rights Law as contained in New York State Executive Law, § 296, *et seq.* ("NYSHRL"); New York City Human Rights Law as contained in the Administrative Code of the City of New York, § 8-107, *et seq.* ("NYCHRL"); and for Plaintiff exercising her rights under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* (the "FMLA").

2.     Plaintiff contends that the terms, conditions and privileges of her employment relationship with Defendant CITY OF NEW YORK (the "CITY") were adversely affected because of her disability and age.

3.      Plaintiff also claims she was denied benefits guaranteed by the FMLA, discriminated against after seeking to exercise her FMLA rights, and retaliated against for taking leave guaranteed by the FMLA.

4.      Specifically, Plaintiff, a highly educated black female born in Brooklyn, New York and of Ghanaian national origin, with known disabilities, who was a high performing, results driven human resources professional with approximately 18 years of diverse experience in full cycle human resources, organizational development, change management and talent acquisition, contends that:

      a.      due to her disabilities and age, she was denied equal employment opportunities, privileges, and benefits as similarly situated, younger and non-disabled male employees; was demoted in title and scope of responsibilities and passed over for promotion, resulting in loss of monetary benefits; and,

      b.      faced retaliation after complaining about discrimination including, among other things, further denial of promotions; retaliatory reassignments; demotions in scope of title and responsibilities; exclusion from meetings and duties; and other employment opportunities, with materially adverse consequences to the terms, conditions, and privileges of her employment.

## II.     **JURISDICTION AND VENUE**

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

6.      This Court has supplemental jurisdiction over the state causes of action pleaded.

7.     Venue is proper in this district under 28 U.S.C. § 1391(b) because the underlying events took place in this district.

### III.   PROCEDURAL REQUIREMENTS

8.     After commencing this action, Plaintiff will serve a copy of the complaint upon the New York City Commission of Human Rights and the Corporation Counsel of the City of New York, in accordance with New York City Administrative Code Section 8-502(c).

### IV.   PARTIES

9.     Plaintiff is a 49-year-old black female.

10.    Plaintiff is a resident of the City and State of New York, residing in Jamaica, Queens, New York.

11.    Defendant CITY is a municipal corporation existing under and by virtue of the laws of the State of New York.

12.    At all relevant times, Defendant DAVID HANSELL ("COMMISSIONER HANSELL") was employed by the CITY as Commissioner of ACS.

13.    COMMISSIONER HANSELL is believed to be in his mid-60s.

14.    At all relevant times, COMMISSIONER HANSELL was responsible for ensuring that employees are not subjected to discriminatory or retaliatory practices.

15.    COMMISSIONER HANSELL is sued in his personal capacity for monetary damages and in his official capacity for injunctive relief.

16.    At all relevant times, Defendant JILL KRAUSS ("KRAUSS") was employed by the CITY as the Chief of Staff to Defendant COMMISSIONER HANSELL.

17.    KRAUSS is believed to be in her mid-40s.

- 3 -

18.     At all relevant times, KRAUSS was responsible for ensuring that employees are not subjected to discriminatory or retaliatory practices.

19.     KRAUSS is sued in her personal capacity for monetary damages and in her official capacity for injunctive relief.

20.     At all relevant times, Defendant MELISSA HESTER ("HESTER") was employed by the CITY as the Associate Commissioner of Human Resources in ACS.

21.     HESTER is believed to be in her early 40s.

22.     At all relevant times, HESTER was responsible for ensuring that employees are not subjected to discriminatory or retaliatory practices.

23.     HESTER is sued in her personal capacity for monetary damages and in her official capacity for injunctive relief.

24.     At all relevant times, Defendant TIA WADDY ("WADDY") was employed by the CITY as the Deputy Chief of Staff to Defendant COMMISSIONER HANSELL.

25.     WADDY is believed to be in her late 30s.

26.     At all relevant times, WADDY was responsible for ensuring that employees are not subjected to discriminatory or retaliatory practices.

27.     WADDY is sued in her personal capacity for monetary damages and in her official capacity for injunctive relief.

28.     At all relevant times, Defendants were acting under color of the statutes, ordinances, regulations, customs and usages of the United States and the State of New York, and under the authority of their respective positions or offices.

29.     At all relevant times, the individual defendants had authority to assign duties and responsibilities to employees; supervised and controlled employee work schedules and conditions of employment; and possessed authority to promote, demote, assign responsibilities, and, if necessary, terminate employees.

30.     At all relevant times, Defendants aided and abetted the discriminatory acts of each other taken against Plaintiff.

**V.      FACTS COMMON TO ALL CAUSES OF ACTION**

*Plaintiff's Background and Education*:

31.     Plaintiff holds a Bachelor of Arts degree in Sociology from Columbia University, and Masters and Doctorate degrees in Sociology, both from Harvard University.

32.     From 1998 to 2000, Plaintiff was a Carnegie-Mellon Foundation Postdoctoral Lecturer and Researcher at Bryn Mawr College, where she taught sociology.

33.     In 2001, Plaintiff became an employee of the CITY, and has been employed by the CITY's Administration for Children's Services ("ACS") since in or around April 2007.

*Plaintiff's Disabilities*:

34.     On April 13, 2017, Plaintiff suffered a workplace injury on an unsafe chair due to ACS' negligence.

35.     Plaintiff was diagnosed with two herniated vertebral discs and one bulging vertebral disc, causing severe pain and muscle spasms.

36.     At all times relevant, the back pain and muscle spasms substantially affected Plaintiff's ability to move, and for a period of time, she could barely walk (the "First Disability").[1]

37.      Her neurosurgeon's preliminary diagnosis is that the disability will become more debilitating over time.

38.     In or about March 2018, Plaintiff was diagnosed with uterine fibroids (the "Second Disability").[2]

39.     Her doctor recommended surgery, which would have required a minimum of four weeks of medical leave.

40.     By August 2018, the uterine fibroids were the size of a one-month old fetus. By November 2018, they were the size of a three-month old fetus. Plaintiff was in constant pain as the fibroids put pressure on her bladder as they grew, and pain on her lower back, further worsening her First Disability.

41.     Plaintiff was scheduled for pre-surgery bloodwork and x-rays in August - September 2018 on the Second Disability to remove the fibroids, but due to Defendants' failures to immediately approve her leave requests and the doctor's schedule, Plaintiff did not undergo the pre-surgery work.

42.     To the knowledge of Defendants, Plaintiff's Disabilities impaired her ability to work, required her to take time away from work for extended periods of time, affected her sleep and impaired her ability to engage in other essential activities of daily living.

43.     Plaintiff's Disabilities caused her debilitating pain and anxiety attacks.

---

[1] Plaintiff's First Disability remains an open case before the New York State Worker's Compensation Board.

44.     Despite Plaintiff's Disabilities, Plaintiff excelled at work and, at all relevant times, was able to perform the duties and functions of her positions with the CITY.

45.     At all relevant times, Plaintiff was regarded as disabled by Defendants.

46.     Defendants are also on notice of Plaintiff's disabilities, since at least April 2017, when she first provided the CITY with Worker's Compensation forms for the injury, which the CITY signed and approved, and also subsequent notes from various physicians and Physical Therapists, and in August 2018, when Plaintiff requested leave to attend to medical requirements, and on March 2019, when Plaintiff submitted an FMLA package to the CITY with medical documentation regarding the Second Disability.

47.     At ACS, despite her disabilities, Plaintiff has effectively discharged her assigned duties, earning more than satisfactory performance evaluations and commendations from COMMISSIONER HANSELL.

*Plaintiff's Extensive Skill, Qualification and Experience*:

48.     Over eighteen (18) years, Plaintiff has achieved a distinguished career with the CITY, earning high performance reviews, several promotions and has aided each CITY agency by creating innovative and efficient policies, processes and systems.

49.     Plaintiff is one (1) of approximately (5) employees out of over 6,800 employees at ACS who holds a Ph.D. and the only one holding a Ph.D. from a top institution like Harvard University.

---

[2] Plaintiff's First Disability and Second Disability are referred to collectively as "Plaintiff's Disabilities" or her "Disabilities."

50.     In 2001, Plaintiff was hired by the CITY's Department of Health and Mental Hygiene ("DOH") as Deputy Director of the Office of Employment Services, with the civil service title of Administrative Manager.

51.     In 2003, Plaintiff was promoted to Director of the Civil Service Administration at DOH, with the same civil service title of Administrative Manager.

52.     Plaintiff was the first at DOH to document the entire recruitment and on-boarding process, worked with various internal and external stakeholders and Subject Matter Experts to streamline and create an end-to-end system to capture the hiring and on-boarding process called the *ePE212* System, still used by DOH today.

53.     In 2006, Plaintiff transferred to the CITY's Office of Management & Budget as the Director of Diversity, Recruitment, Training & Staff Development, with the civil service title of Supervising Budget Analyst.

54.     In or around April 2007, Plaintiff moved to ACS as a Human Resources Manager, with the civil service title of Administrative Staff Analyst, Non-Managerial.

55.     There, Plaintiff helped create the Agency's first performance and resume database, "ACS Jobs Online," an innovative access-based, paperless resume submission database.

56.     In or around November 2012, Plaintiff was promoted to Executive Director and Chief of Staff of the Office of Human Resources Division ("HR"), with the civil service title of Administrative Manager.

57.     As Executive Director and Chief of Staff, Plaintiff provided expertise to the Assistant Commissioner of Human Resources in administering, managing and aligning services

and processes to support HR; served as an authorized representative for the Assistant Commissioner at hearings, meetings and conferences; interpreted and communicated employee and CITY personnel policies and procedures.

58.     As Executive Director and Chief of Staff, Plaintiff hired KPMG, an outside consultant, to help streamline the recruitment and onboarding process.

59.     Plaintiff also worked closely with ACS' Office of Information Technology to create SARC SharePoint 1.0 – similar to the *e*PE212 system she spearheaded at DOH.

60.     Despite minimal help from KRAUSS and WADDY, Plaintiff vastly improved ACS' archaic human resources processes and systems.

*Plaintiff is Named Acting Assistant Commissioner of HR:*

61.     In or around October 2015, Plaintiff was named Acting Assistant Commissioner of HR by Mitch Gibson, ACS' former Deputy Commissioner of Administration. She served as a senior advisor in a strategic and operational role and guided ACS leadership, employees, division HR liaisons and HR staff in provision, interpretation, and implementation of ACS-wide human resources services.

62.     In or around May 2016, Karen Alexander ("Alexander") became the permanent Assistant Commissioner of HR, and Plaintiff reverted back to Executive Director and Chief of Staff.

*Plaintiff is Named Acting Associate Commissioner of HR:*

63.     In July 2018, Alexander resigned and the Assistant Commissioner of HR title was changed to "Associate Commissioner of HR."

64. KRAUSS appointed Plaintiff to be Acting Associate Commissioner of HR until a permanent Associate Commissioner was selected.

65. The Associate Commissioner of HR would, under the revised organizational structure, supervise both the Assistant Commissioner of Operations and Assistant Commissioner of Recruitment & Retention.

66. According to the job description for the position of Assistant Commissioner of Recruitment & Retention by KRAUSS and COMMISSIONER HANSELL, the position had essentially the same duties as Plaintiff's Executive Director and Chief Staff title, except it was downgraded in scope but elevated in managerial level and salary.

*KRAUSS and COMMISSIONER HANSELL Interfere with Plaintiff's Medical Leave*:

67. On or around August 8, 2018, Plaintiff advised WADDY that she needed to take medical leave and vacation from August 22, 2018 to September 11, 2019 to receive treatment for her Disabilities, including the fibroid surgery her doctor recommended.

68. On August 20, 2018, WADDY told Plaintiff to make the request formally via email, which Plaintiff did, to both WADDY and KRAUSS.

69. On or around August 21, 2018, KRAUSS advised Plaintiff that it was "important that [Plaintiff] be on site at ACS this week," a three-week vacation is "not possible at this time," but that she would let Plaintiff take a few days off the following week and discuss more extended time off in the near future.

70. Emailing back the same day, Plaintiff explained that she is "exhausted and also in a great deal of pain due to 2 herniated discs and 1 bulging disk from my fall on the job. I have not been able to take the necessary medical days to address these issues."

71.     Later that day, KRAUSS directed Plaintiff to postpone her request until Fall 2018, and said she would approve medical leave if it was for an immediate medical action. Plaintiff immediately objected and informed KRAUSS that an employee requesting medical leave is not seeking permission or a conversation. KRAUSS responded, "then I will bring this up to the Commissioner."

72.     Under the CITY's personnel rules, an employee requesting medical leave need only provide the dates of leave and an assignment coverage schedule.

73.     On August 23, 2018, KRAUSS emailed Plaintiff that COMMISSIONER HANSELL wanted an update on Plaintiff's leave plans, and how she "might proceed with taking some time off to address your immediate concerns, but perhaps a more extended leave later in the fall."

74.     On or around August 23, 2018, COMMISSIONER HANSELL informed Plaintiff, with KRAUSS present, that ACS was in a "crisis" and that Plaintiff essentially could not take FMLA leave.

75.     The "crisis" concerned a convicted murderer whom ACS hired as a Juvenile Counselor in 2014, without running a background check with the NYS Justice Center Department, and who had recently been arrested for assaulting a child in ACS custody.

76.     As a result, the NYS Office of Children and Family Services ("OCFS") advised ACS it would audit background checks on all ACS personnel records. In addition, the NYC Department of Investigations began investigating as well.

77.     Consequently, COMMISSIONER HANSELL ordered "spot checks" of the agency's over 7,000 employees to find any felony records and ensure that all appropriate checks

were in the personnel records ahead of the OCFS audit. This task kept Plaintiff and the understaffed HR staff in the office well past 9:00 PM for several weeks straight.

78.     As a result, COMMISSIONER HANSELL and KRAUSS denied Plaintiff's request for medical leave to address her Disabilities.

79.     The "crisis" was used as a pretext to deny Plaintiff's FMLA and medical leave.

80.     In contrast, during the same "crisis," similarly situated but non-disabled, non-minority and white, senior level ACS staff involved with the "crisis," including KRAUSS, were allowed to take extended vacations, while Plaintiff's FMLA request was denied.

81.     More significantly, Julie Farber, a Caucasian female and the Deputy Commissioner in charge of the Division of Family Permanency Services in which Jacques Edwards committed the alleged crime and was arrested, was allowed to take vacation in excess of three weeks during this period. Like Plaintiff, Farber reported to COMMISSIONER HANSELL and KRAUSS, who each, upon information and belief, approved her vacation.

82.     Moreover, a few days after August 23, 2018, upon speaking to the ACS HR leadership team and a DCAS senior staff member about KRAUSS insisting that Plaintiff only take medical leave to address her "immediate needs," Plaintiff learned that the HR leadership team had never heard of a senior level staff instructing an employee to take leave based only on "immediate needs." DCAS and HR then advised Plaintiff to have the FMLA form completed by her physician, submit it to the appropriate offices and take her FMLA.

83.     At the time, Plaintiff did not file papers for FMLA Leave because she feared retaliation from COMMISSIONER HANSELL and KRAUSS.

84.     On September 11, 2018, Plaintiff emailed COMMISSIONER HANSELL, KRAUSS, and WADDY that she was having severe back pains and was going to see her doctor. Upon seeing her doctor, Plaintiff had a "minor procedure" for her lower back (several cortisone shots), requiring her to take medical leave from September 11, 2018 to September 17, 2018 (the "September 2018 Leave").

85.     The actions of COMMISSIONER HANSELL and KRAUSS in refusing to immediately allow Plaintiff to leave to attend to her Disabilities interfered with and frustrated Plaintiff's rights under the FMLA, and was discriminatory against Plaintiff on the basis of her Disabilities.

_Plaintiff is Denied Promotion to Associate Commissioner of HR_:

86.     In or around September 2018, Plaintiff applied for the Associate Commissioner of HR position.

87.     Plaintiff was interviewed in each of three rounds.

88.     In or around October 2018, less than a few weeks after Plaintiff returned from the September 2018 Leave, COMMISSIONER HANSELL and KRAUSS informed Plaintiff that they selected HESTER as permanent Associate Commissioner of HR. COMMISSIONER HANSELL also told Plaintiff she was one of the three candidates considered.

89.     On November 17, 2018, HESTER became Associate Commissioner of HR and Plaintiff reverted to Executive Director and Chief of Staff, HR, reporting directly to HESTER.

90.     Plaintiff was denied promotion to Associate Commissioner based on her disabilities and in retaliation for her attempt to use FMLA leave.

91.     HESTER was not disabled and had not attempted to use FMLA leave.

92.     Plaintiff was more qualified for the position, having twice successfully acted in the position with a strong performance and holding a doctoral degree, compared to HESTER's undergraduate degree.

*HESTER Removes Plaintiff's Job Functions During her Medical Leave and gives them to Younger, Non-Disabled Male Employees:*

93.     After HESTER's appointment, Plaintiff and her staff worked closely with HESTER.

94.     To recuperate from her Disabilities, Plaintiff took leave between December 18, 2018 and January 2, 2019 (the "December 2018 – January 2019 Leave").

95.     While Plaintiff was on the December 2018 – January 2019 Leave, HESTER selected Evan Jones as Senior Advisor to the Associate Commissioner.

96.     HESTER then removed Plaintiff's duties as Chief of Staff and assigned them to Mr. Jones.

97.     Mr. Jones, a male under age forty, is non-disabled, far less qualified and experienced and less educated than Plaintiff.

98.     In addition, during Plaintiff's December 2018 – January 2019 Leave, HESTER hired Brandon Respress as Director of Recruitment and Retention.

99.     After hiring Mr. Respress, HESTER removed Plaintiff's duties as Executive Director of HR and assigned them to Mr. Respress.

100.     Mr. Respress, a male under age forty, is non-disabled and far less qualified, less experienced and less educated than Plaintiff.

101.     HESTER deliberately waited until Plaintiff's December 2018 – January 2019 Leave to remove her duties.

102.     Although Plaintiff was available to be consulted, HESTER, in hiring Mr. Respress, improperly filled vacancies that fell under Plaintiff's supervision and purview, without her input.

*HESTER Demotes Plaintiff to Executive Director, Special Projects and Classifications*:

103.     Days after Plaintiff returned from the December 2018 – January 2019 Leave, on or around January 8, 2019, HESTER reassigned Plaintiff (and demoted her in title and scope of duties) to the title of Executive Director, Special Projects and Classifications.

104.     HESTER reassigned Plaintiff with the knowledge and approval of COMMISSIONER HANSELL, KRAUSS, and WADDY.

105.     Due to her reassignment (and demotion in title and scope of responsibility), Plaintiff's staff was reduced from approximately twenty to two, with most of the staff reassigned to Mr. Respress, the younger, non-disabled, and less qualified male.

106.     HESTER also began excluding Plaintiff from meetings she previously attended before her 2019 leave. Specifically, on or around January 8, 2019, HESTER requested that Plaintiff invite her to "view" her calendar. Afterward, the meeting exclusions began.

107.     On January 9, 2019, Plaintiff met with HESTER to discuss the reassignment. Later, Plaintiff emailed HESTER asking for help transferring to another ACS division to continue her professional growth.

108.     Receiving no meaningful response, on or around January 18, 2019, Plaintiff made a final appeal to HESTER regarding her reassignment, and complained that she had been reassigned (and demoted in title, function and scope of responsibility).

- 15 -

109. HESTER disregarded Plaintiff's request and complaint and told Plaintiff to raise the issue with KRAUSS and WADDY.

110. On January 23, 2019, Plaintiff complained to KRAUSS and WADDY about her "demotion in title and scope of autonomy," and asked that they facilitate Plaintiff's reassignment to another area of ACS.

111. Plaintiff also complained to KRAUSS and WADDY that her "current future role in HR [was] untenable, unworkable and humiliating" and that it was clear she was being "forced out" of HR, and requested that she be moved out of HR, to avoid further embarrassment.

112. Rather than assist Plaintiff, KRAUSS, to the knowledge and approval of COMMISSIONER HANSELL, WADDY, and HESTER, merely told Plaintiff to apply to other "ongoing opportunities" throughout ACS, and made a bare minimum offer to forward Plaintiff's resume to the Mayor's Office of Appointments.

*Plaintiff Complains to ACS' Office of Equal Employment Opportunity*:

113. Unable to bear Defendants' conduct, on or around January 23, 2019, Plaintiff complained to Jodi Savage, the Director of ACS' Office of Equal Employment Opportunity ("EEO Office") that she had been unlawfully demoted in title and scope of responsibilities based on her gender, disability and age by COMMISSIONER HANSELL, KRAUSS, WADDY and HESTER.

114. On or around January 25, 2019, Plaintiff complained to the ACS EEO Office about gender, disability and age discrimination against HESTER, and that Mr. Respress had taken over her job functions as Executive Director and Mr. Jones had taken her job functions as Chief of Staff.

115.    Ms. Savage responded that since Plaintiff had discrimination complaints against her current supervisors – COMMISSIONER HANSELL and KRAUSS – her complaint would be forwarded to the CITY's Department of Citywide Administrative Services ("DCAS") for investigation.

116.    On January 31, 2019, KRAUSS, to the knowledge and approval of COMMISSIONER HANSELL, WADDY and HESTER, specifically denied Plaintiff's request to move out of HR.

117.    As of today, Plaintiff's EEO complaint remains under investigation by DCAS' Office of Citywide Equity and Inclusion.

*Plaintiff Finally Takes FMLA Leave and Upon her Return is Assigned No Work and is Ultimately Forced out of HR*:

118.    From March 20 to April 15, 2019, Plaintiff finally took FMLA medical leave to address her Disabilities, particularly for the removal of uterine fibroids (the "March – April 2019 Leave").

119.    Plaintiff told HESTER in an email that she was undergoing surgery while on FMLA leave and would be out of work for about three weeks.

120.    HESTER was involved in approving Plaintiff's FMLA leave.

121.    On April 24, 2019, and upon her return from the March – April 2019 Leave, HESTER told Plaintiff that she did not have any work for her and that Plaintiff had until May 9, 2019 to vacate her office.

122.    HESTER's decision was made with the knowledge and approval of COMMISSIONER HANSELL, KRAUSS and WADDY.

123.    As a result of HESTER's discriminatory refusal to assign Plaintiff work within the scope of her duties and responsibilities before she went on medical and FMLA Leave, Plaintiff had no work to do and was forced to ask around ACS to secure another position outside of HR.

124.    Upon information and belief, no other ACS employee had been forced to coordinate his or her own transfer within the agency.

125.    In addition, although Jose Mercado, Assistant Commissioner, Division of Finance, had over 20 available positions and was willing to carve out a position for Plaintiff under his jurisdiction, KRAUSS blocked the effort, even though she knew HESTER had given Plaintiff until May 9, 2019 to vacate her office.

126.    HESTER had told Mr. Mercado to "hold off" in assisting Plaintiff.

127.    On or around April 30, 2019, solely due to Plaintiff's own personal efforts, Deputy Commissioner Winette Saunders in ACS' Division of Administration offered Plaintiff the newly created position of Policy Analyst and Writer in her division.

128.    Ultimately, on June 30, 2019, Plaintiff officially moved from HR to the Division of Administration, ending her approximately 18-year career in human resources management, and adversely and permanently affecting her immediate and future career prospects.

*Defendants' Actions Continue to Cause Plaintiff Significant Loss and Damage*:

129.    As a proximate result of Defendants' discriminatory conduct towards Plaintiff, Plaintiff has suffered and continues to suffer significant monetary loss and damages, including the loss of past and future earnings, and other employment benefits.

130.     As a further proximate result of Defendants' actions, Plaintiff has suffered emotional distress, lasting embarrassment, humiliation and anguish, as well as other incidental and consequential damages and expenses.

131.     Defendants' conduct was outrageous and malicious, intended to injure Plaintiff, and carried out with reckless indifference to Plaintiff's protected civil rights, thereby entitling her to punitive damages.

132.     Plaintiff has no complete, plain, clear or adequate remedy at law.

133.     Defendants' acts against Plaintiff continue. Defendants must be restrained from further discrimination against Plaintiff and directed to cease and desist from their unlawful acts against Plaintiff.

134.     Plaintiff believes that Defendants' unlawful acts against her will continue until this Court, by injunction and/or its judgment, compels otherwise.

## FIRST COUNT AGAINST DEFENDANT CITY
### (Disability Discrimination pursuant to the Rehabilitation Act)

135.     Plaintiff repeats and realleges each allegation in each paragraph above.

136.     The Rehabilitation Act prohibits discrimination in employment against people with disabilities, including actual and perceived disabilities.

137.     Defendant CITY receives federal funding and is subject to the dictates of the Rehabilitation Act.

138.     Plaintiff is a disabled individual within the meaning of the Rehabilitation Act.

139.     Plaintiff was well-qualified for her position.

140.     On the basis of her disability, Plaintiff was discriminated against by being:

        a.   denied medical leave in 2018;

- 19 -

b.  denied promotion to the position of Associate Commissioner of HR that went to HESTER in 2018;

c.  denied assignment to the position Executive Director of Recruitment and Retention given to Mr. Respress;

d.  demoted in title and scope of responsibilities and reassigned to the position of Executive Director, Special Projects and Classifications, removing some of her key job functions;

e.  denied her work or assignments upon return from medical leave for March-April 2019 Leave, and

f.  forced out of an upward trajectory career in HR and transferred to ACS' Division of Administration to work as a Policy Analyst and Writer.

141.    By reason of the foregoing, Plaintiff suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

## SECOND COUNT AGAINST DEFENDANT CITY
### (Retaliation pursuant to the Rehabilitation Act)

142.    Plaintiff repeats and realleges each allegation in each paragraph above.

143.    Defendants' aforesaid conduct was also in retaliation for Plaintiff's complaints of discrimination on the basis of disability and violated Plaintiff's rights under the Rehabilitation Act.

144.    By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

### THIRD COUNT AGAINST ALL DEFENDANTS
**(Interference with rights pursuant to the FMLA)**

145.    Plaintiff repeats and realleges each allegation in each paragraph above.

146.    Plaintiff is an "employee" as defined under the FMLA and was eligible to take FMLA leave.

147.    Defendants CITY, COMMISSIONER HANSELL and KRAUSS are each an "employer" for purposes of the FMLA.

148.    As a direct and proximate result of Defendants' conduct alleged herein, Plaintiff's rights were interfered with and denied in violation of the FMLA.

149.    Defendants, especially COMMISSIONER HANSELL and KRAUSS, frustrated Plaintiff's attempts to take medical leave under the FMLA.

150.    As a result of COMMISSIONER HANSELL and KRAUSS unlawfully interfering with Plaintiff's rights under the FMLA and discriminating against her on the basis of disability, Plaintiff continued to experience untreated severe back pain, muscle spasms and difficulty walking, stemming from her First Disability.

151.    In addition, Plaintiff developing uterine fibroids, which her doctor had wanted to remove immediately in August 2018, continued to grow due, in part, to the severe stress caused by COMMISSIONER HANSELL and KRAUSS and their discriminatory conduct.

152.    By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

**FOURTH COUNT AGAINST ALL DEFENDANTS**
**(Retaliation in violation of the FMLA)**

153.    Plaintiff repeats and realleges each allegation in each paragraph above.

154.    Plaintiff engaged in protected activity under the FMLA by requesting leave, which she was entitled to pursuant to the statute, starting in August 2018.

155.    As a proximate result of and in retaliation for Plaintiff's attempt to exercise and exercising her FMLA rights, Plaintiff was (i) denied promotion to the position of Associate Commissioner of HR that went to HESTER, and Assistant Commissioner of Recruitment and Retention; (ii) demoted to the position of Executive Director, Special Projects and Classifications; (iii) some of her job functions taken away and reassigned; (iv) refused assignment to any work upon return from medical leave; and (v) forced out of a career in HR at ACS.

156.    Defendants took the foregoing actions to deprive Plaintiff of equal employment and other contractual opportunities on account of her attempting to engage in protected activity under the FMLA.

157.    By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial, but estimated to be no less than $100,000.00.

**FIFTH COUNT AGAINST ALL DEFENDANTS**
**(Disability and Age Discrimination in violation of the NYSHRL)**

158.    Plaintiff repeats and realleges each allegation in each paragraph above.

159.    At all relevant times, Plaintiff was an "employee" within the meaning of the NYSHRL.

160.    By adversely affecting the terms, conditions and privileges of Plaintiff's employment because of her disability and age, Defendants violated the NYSHRL.

161.    By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

## SIXTH COUNT AGAINST ALL DEFENDANTS
### (Disability and Age Discrimination in violation of the NYCHRL)

162.    Plaintiff repeats and realleges each allegation in each paragraph above.

163.    At all relevant times, Plaintiff was an "employee" within the meaning of the NYCHRL.

164.    By adversely affecting the terms, conditions and privileges of Plaintiff's employment because of her disability and age, Defendants violated the NYCHRL.

165.    By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

## SEVENTH COUNT AGAINST ALL DEFENDANTS
### (Retaliation in Violation of NYSHRL and NYCHRL)

166.    Plaintiff repeats and realleges each allegation in each paragraph above.

167.    Defendants' conduct was retaliation for Plaintiff's complaints of discrimination and violated Plaintiff's rights under NYSHRL and NYCHRL.

168.    All the various actions Defendants took against Plaintiff after she complained of discrimination is unlawful retaliation in violation of New York City and New York State Human Rights Laws.

169.    By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

## PUNITIVE DAMAGES

170.    Plaintiff claims punitive damages by reason of the wanton, unrepentant, reckless and egregious conduct of the individual Defendants alleged.

**WHEREFORE,** Plaintiff prays that this Court grant her judgment containing the following relief:

a.    Impanel a jury to hear Plaintiff's claims;

b.    An award of damages in an amount to be determined upon the trial of this matter to compensate Plaintiff for her monetary loss and damages, including Plaintiff's loss of past and future earnings, bonuses, compensation, and other employment benefits;

c.    An award of damages to compensate Plaintiff for mental anguish, humiliation, embarrassment, and emotional injury for each cause of action;

d.    An award of damages in an amount to be determined upon the trial of this matter to compensate Plaintiff for violations of her rights under the Rehabilitation Act, the NYSHRL and the NYCHRL;

e.    An award of punitive damages to be determined at the time of trial for the claims under the Rehabilitation Act, the NYSHRL and the NYCHRL;

f.    An award of reasonable attorneys' fees and costs related to Plaintiff's claims under the Rehabilitation Act, the NYSHRL, the NYCHRL and the FMLA, and;

g.    Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       November 27, 2019

                              Respectfully Submitted,


                              _____
                              SAMUEL O. MADUEGBUNA, ESQ.
                              **MADUEGBUNA COOPER LLP**
                              Attorneys for Plaintiff,
                              FAUSTINA E. HAYNES
                              30 Wall Street, 8th Floor
                              New York, NY 10005
                              (212) 232-0155


TO:    Defendants

       THE CITY OF NEW YORK
       c/o Corporation Counsel
       Law Department
       100 Church Street
       New York, New York 10007

       DAVID HANSELL
       c/o New York City Administration for Children's Services
       150 William Street
       New York, New York 10038

       JILL KRAUSS
       c/o New York City Administration for Children's Services
       150 William Street
       New York, New York 10038

       MELISSA HESTER
       c/o New York City Administration for Children's Services
       150 William Street
       New York, New York 10038

       TIA WADDY
       c/o New York City Administration for Children's Services
       150 William Street
       New York, New York 10038

*UNITED STATES DISTRICT COURT*
*SOUTHERN DISTRICT OF NEW YORK*                    *Docket No.:*
-------------------------------------------------------------------------------------------------------------------
*FAUSTINA E. HAYNES,*

*Plaintiff,*

*-against-*

*THE CITY OF NEW YORK, DAVID COMMISSIONER HANSELL, JILL KRAUSS, MELISSA HESTER, TIA WADDY and JOHN and JANE DOE (said names being fictitious, the persons intended being those who aided and abetted the unlawful conduct of the named Defendants),*

*Defendants.*

-------------------------------------------------------------------------------------------------------------------

*COMPLAINT AND JURY DEMAND*

-------------------------------------------------------------------------------------------------------------------
*Signature (Rule 130-1.1-a)*
_____

*Print name beneath*
*SAMUEL O. MADUEGBUNA, ESQ.*

_____

*Yours, etc.*

*MADUEGBUNA COOPER LLP*
*Attorneys for Plaintiff*
*30 Wall Street, 8ᵗʰ Floor*
*New York, New York 10005*
*(212) 232- 0155*

*To: All Counsel of Record*
_____
*Service of the within is hereby admitted on*
_____

*Attorneys for*